UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LAVORIS TURNER,          )
                               )
      Plaintiff,        )
                               )
v.                        )     Case No. 4:13 CV 868 CDP
                               )
CAROLYN W. COLVIN,     )
Commissioner of Social Security,  )
                               )
      Defendant.     )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Lavoris Turner's application for a period of

disability and disability insurance benefits under Title II of the Social Security Act,

42 U.S.C. §§ 401 *et seq.,* and her application for supplemental security income

under Title XVI, 42 U.S.C. §§ 1381 *et seq.* Turner claims she is disabled because

she suffers from diabetes, asthma, back pain, and "falling out."  After a hearing,

the Administrative Law Judge concluded that Turner was not disabled. Because I

find that the ALJ's decision was based on substantial evidence on the record as a

whole, I affirm.

## I.    Procedural History

On December 23, 2010, Turner protectively filed an application for a period

of disability and disability insurance benefits and an application for supplemental

security income.[1]  In both applications, Turner alleged an onset date of November 1, 2010.  After her claims were denied on April 15, 2011, Turner filed an untimely written request for a hearing before an administrative law judge.  The Commissioner allowed the late filing upon her showing of good cause, and on March 22, 2012, Turner appeared with counsel at an administrative hearing.  Turner and a vocational expert testified at the hearing.

After the hearing, the ALJ denied Turner's applications, and she appealed to the Appeals Council.  On March 4, 2013, the Appeals Council denied Turner's request for review.  The ALJ's decision thereby became the final decision of the Commissioner.  *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008).

Turner now appeals to this court. She argues that the ALJ's finding of non-disability is not supported by substantial evidence because it resulted from an improper analysis of the record.  She also alleges that the ALJ erred by failing to consider evidence of her depression and by improperly assessing her credibility.

## II.    <u>Evidence Before the Administrative Law Judge</u>

### <u>*Medical Records Before Period of Alleged Disability*</u>

Turner had filed for benefits on four previous occasions and was denied each time.  (Tr., pp. 126, 148–49.)  Because of these previous filings, the record before

---

[1] Turner previously filed for benefits in January 2002, April 2006, January 2009, and October 2009.  Her applications were denied initially and were not pursued further.  (Tr., pp. 126, 148–49.)  Turner raises no claim that her previous applications should be reopened.

the ALJ contained medical records from well before Turner's alleged onset date of November 1, 2010. I have summarized that evidence because it may be relevant "in helping to elucidate" Turner's conditions. See *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

According to the medical records before the ALJ, Turner visited Saint Louis ConnectCare multiple times in 2004 and 2005, often complaining of epigastric pain. Turner occasionally reported trouble with asthma, fatigue, back and chest pain, and urinary incontinence. Throughout this period, Turner underwent multiple tests, including an abdominal sonogram, chest exam, and pelvic ultrasound, though each test reported unremarkable findings. (Tr., pp. 301–05, 308–11, 372, 376–77, 379, 386–88.)

Turner was also hospitalized at Barnes-Jewish Hospital five times between 2005 and 2007 for epigastric pain, resulting in a diagnosis of pancreatitis. (Tr., pp. 214–19, 220–221, 227–31, 222–26, 235, 244.)

On November 29, 2005, Turner visited the emergency room at Barnes-Jewish Hospital, complaining of pain in her right shoulder. She was given medication for her pain and was discharged. (Tr., pp. 263–65.)

Turner saw Dr. Qalbani at Saint Louis ConnectCare on October 31, 2006, complaining of a cough, congestion, and an irritated right eye. The treatment records noted that Turner had previously been diagnosed with asthma but that

Turner had been out of her asthma medication for two weeks. The physician's assessment was acute bronchitis, conjunctivitis, and a corneal abrasion. (Tr., pp. 295–99.)

Turner also visited Myrtle Hilliard Davis Comprehensive Health Centers, Inc. on multiple occasions in 2006 and 2007. Records reveal a past diagnosis of asthma, though she often reported that her asthma was stable. On one occasion in 2007, Turner complained of chest pains and acid reflux. (Tr., p. 350–51, 353, 367.)

Turner saw Dr. Devitre on December 15, 2008. She complained that she was easily fatigued, had a decreased appetite, and that she coughed when she got too hot or upset. She reported crying spells and insomnia. Dr. Devitre's assessment included abdominal pain, depression, tobacco abuse and asthma. (Tr., pp. 329–31). Turner also underwent a chest x-ray on December 15, 2008. The x-ray showed minimal hyperinflation of the lungs but was "otherwise unremarkable." (Tr., p. 348.)

On December 30, 2008, Turner saw Dr. Devitre because lab results indicated blood and protein in her urine. She complained of abdominal pain and requested medicine. Dr. Devitre assessed hematuria and chronic abdominal pain and prescribed Tramadol as needed for her pain. (Tr., p. 328.)

Turner saw Dr. Devitre again on February 10, 2009. She reported that her abdominal pain had improved. Her depression was better controlled—she had less anhedonia and no suicidal ideations. She also denied insomnia. She reported that she was not using Albuterol, though she did have a dry cough. (Tr., pp. 325–227.)

On June 10, 2009, Turner followed up with Dr. Devitre. Turner complained of bladder spasms and frequent urination. She denied depression and reported that she had stopped taking medication for her depression because she did not think she needed it anymore. She had insomnia and acid reflux while sleeping. She had no dyspnea and rarely used Albuterol. She had no other complaints. The doctor's assessment included COPD, GERD, insomnia, and urge incontinence, and Turner was prescribed Ditropan for her bladder and Trazodone for insomnia. (Tr., pp. 322–24.)

Turner saw Dr. Devitre on September 2, 2009, for a follow-up visit. Turner stated that she still had some insomnia but that she had not been taking her Trazodone medication. She reported using Albuterol for her asthma and saw improvement, as she had no dyspnea and no cough. She also reported that medicine was helping with her bladder and that her depression was stable. (Tr., pp. 319–21.)

On November 25, 2009, Turner saw Dr. Nicole Delsoin. Turner reported that she had depression but that she had no sleep disturbances. She further reported

that she had a cough but had no wheezing or dyspnea, and she had abdominal pain but no joint paint or muscle aches. She also denied an increase in urine frequency. The physician's assessment was a working diagnosis of abdominal pain, COPD, esophageal reflux, nicotine dependence, and mild depression. (Tr., pp. 315–18.)

At an April 2010 visit, Turner denied having abdominal pain, muscle aches, joint pain, dyspnea, wheezing, urinary incontinence, depression, and sleep disturbances. Dr. Delsoin's physical findings highlighted no specific medical issues with Turner, but her assessment included COPD, esophageal reflux, osteoarthritis, and nicotine dependence. Dr. Delsoin reported that Turner showed no signs and complained of no symptoms of depression, and she "urged [Turner] to stop smoking and make her meds her priority." (Tr., pp. 393–96.)

### *Medical Records During Period of Alleged Disability*

Turner alleged a disability onset date of November 1, 2010. On November 16, 2010, Turner visited Dr. Delsoin, complaining that she was "breaking out" with a rash. Turner's current medications included Advair, Albuterol, Ibuprofen, ProAir HFA, Ranitidine, and Tramadol. Dr. Delsoin's assessment was COPD, esophageal reflux, nicotine dependence, and scabies. Dr. Delsoin refilled Turner's medications and prescribed other medication for scabies. (Tr., pp. 391–92.)

On February 9, 2011, Turner followed up with Drs. Owan Nwanodi and Dielson due to a missed mammogram and elevated glucose level. She reported

that she was working in a factory. She denied having dyspnea, wheezing, abdominal pain, joint pain, dizziness, fainting, and depression. She reported waking up in the middle of the night and complained of acid reflux. The assessment was essential hypertension, COPD, esophageal reflux, nicotine dependence, and secondary insomnia. Dr. Dielson prescribed Trazodone and Amlodipine Besylate. (Tr., pp. 426–31.) Laboratory tests conducted on the same day showed Turner had an A1C level of 6.1. (Tr., p. 463.)

On February 17, 2011, Turner followed up with Dr. Delsoin. Dr. Delsoin discussed Turner's diabetes diagnosis and prescribed Metformin. (Tr., pp. 423–25.)

At a March 2011 visit, Turned denied that she was in any pain or discomfort, and she indicated that she was still working in the factory. Dr. Delsoin noted that Turner's hypertension appeared controlled. Dr. Delsoin talked with Turner about her continued tobacco use and counseled Turner to take her medications. (Tr., pp. 420–22.)

Turned saw Dr. Leslie McCrary-Etuk on February 22, 2012, complaining of "generalized diffuse body aches for the past 1 year relieved with Tylenol or NSAIDS." She denied dyspnea, wheezing, dizziness, and fainting. Turner was ordered to continue on her medications. (Tr., pp. 415–17.)

On March 7, 2012, Turner followed up with Dr. McCrary-Etuk for a routine visit and denied that she was in any pain. She denied having dyspnea, wheezing, dizziness, or fainting. Dr. McCrary-Etuk discussed concerns about Turner's continued tobacco use and prescribed nicotine patches. Her A1C level was 5.7, and she was ordered to continue her current diabetes regimen. (Tr., pp. 412–14.)

### *Function Report*

According to Turner's function report, completed February 8, 2011, she lived with her family. She described her day as getting ready, cleaning, eating, watching television, reading, playing games, sewing clothes, and talking on the phone. She cooked every day, though sometimes she would get drowsy and feel sick. She ate sandwiches, greens, corn bread, and on occasion fast food. She could dress, bathe, and otherwise care for herself but would have to take her time. She cleaned her house and worked in the yard every day without the help or encouragement of others. She used a pager as a reminder to take care of personal needs and to take her medication. Turner stated that she cared for her children, grandchildren, and a friend, though she sometimes received help from others.

Turner reported that she went out every day to take care of her business or pay bills. She would walk, use public transportation, or get a ride with someone. She could not go out alone, however, because she would feel drowsy and sick. She

also shopped twice a month for three hours each time. She went to church on a regular basis and did not need anyone to accompany her.

Turner reported that she could no longer work over eight hours because she would get sick or become drowsy and she did not want to fall out. She also reported that she could not get around like she used to because of her illness and because she had "seezing." She reported that her conditions affected her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and use her hands. The conditions also affected her memory and sometimes her ability to talk, hear, see, understand, and follow directions. She stated that she had trouble sleeping. She could walk about a half a block before needing to rest for thirty to forty minutes. She could not write sometimes due to pain and would have to wait about an hour for the pain to subside. Turner wrote that she could pay attention for seven to eight hours and could follow written and spoken instructions. She did not have any problems with authority figures and had never been fired or laid off because of problems getting along with others. She reported that she was able to handle stress and changes in routine.

Turner also filled out a supplemental questionnaire on February 8, 2011. She stated that she was not working. She had not received any treatment since she filed her claim, but she did have an upcoming appointment. She had a valid driver's license and was able to drive. (Tr., pp. 174–76.)

## *Consultative Examination*

On April 12, 2011, Dr. Arjun Bhattacharya performed a consultative examination on Turner.  During the examination, Turner reported that she had diabetes accompanied by polyuria, polyphagia, and some nocturia, but she otherwise had no symptoms.  She monitored her blood glucose frequently.  Turner also reported that she had suffered from generalized back pain for about six years, though she could not identify any specific location of the pain or describe any radiation.  She did not take any specific medication for her back, and she denied having joint pain.  Moreover, she reported that she was able to walk about four to five blocks, stand for about thirty minutes, sit for about two hours, and lift up to fifty pounds.  She could bend and stoop, and she did not use any assistive devices. She also reported that she was able to write, hold a coffee cup, and open a jar top. (Tr., p. 405.)

Turner also stated that she had been diagnosed with COPD but that she did not have any discomfort or shortness of breath at that time.  Turned denied having asthma or pneumonia.  She could climb about one to two flights of stairs and smoked a pack of cigarettes a day.  She had no history of headaches or a stroke. She reported having a seizure in 2000, but she had not had any seizures since then and did not take any specific medicine for it. (Tr., p. 406.)

Regarding her medications, Turner reported that she used a Proair inhaler and Advair twice a day. She also took Trazodone, Metformin, Naproxen, Amlodipine, and Ranitidine. *Id.*

Dr. Bhattacharya's physical examination noted that Turner had poor air intake but that her chest wall was symmetrical. He also noted that she had sibilant rhonchi. Dr. Bhattacharya found that Turner had normal alignment of the spine and that there was no significant spasm of the cervical, thoracic, or lumbar areas. He also noted that her range of movement was within normal limits. Turner had normal gait and station, and she had no problem getting on and off the examining table and moving around the room without any assistive devices. He noted that Turner had fine and dexterous finger control movements. Moreover, her motor and sensory systems were within normal limits and the Romberg test was negative. (Tr., pp. 406–07.)

Dr. Bhattacharya's clinical impression included diabetes mellitus on no medications; GERD, though it was controlled with medication; and a history of COPD with occasional shortness of breath and the use of medication. Dr. Bhattacharya reported that there were no objective physical findings of back discomfort. Moreover, he noted that Turner had a history of seizures but that details regarding the seizures were not made available and she had no neurological findings. (Tr., p. 407.)

### *Disability Reports*

Turner's reported conditions in her initial disability report were asthma, back pains, and "falling out." She complained that her conditions caused her to stop working. (Tr., p. 153.) In a subsequent disability report dated July 1, 2011, Turner reported that since she last completed a disability report, her conditions had worsened because she had a "seza" and "fill out" and could not pay for her medication. She also reported that she could not walk as much or stand for a long time, she had sickness in the morning, and she had high blood pressure. The approximate date these changes occurred was April 12, 2011. (Tr., pp. 177–78.)

### *Testimony at the March 22, 2012 Administrative Hearing*

Turner testified at the hearing before the ALJ. She stated that she was 49 years old and went to the twelfth grade, but she did not graduate high school and did not have her GED. Additionally, she testified that she had not received any additional education or job training since high school. (Tr., p. 31.)

Turner stated that she last worked in October 2010 on an assembly line making washing powder. At that job, she would lift boxes weighing between twenty to thirty pounds every twenty minutes. Turner worked there for two months until she was fired for not calling or showing up to work. Before her work on the assembly line, Turner worked in housekeeping at a department store for five years and at a nursing home for two years. (Tr., pp. 31–35.)

When examined by her attorney, Turner stated that she was single and did not have any children under the age of 18 living with her. She testified that she was currently receiving medical treatment at Myrtle Hilliard for diabetes, insomnia, body aches, and back pain. She took medication for the diabetes which caused her to feel tired during the day. She also stated that she was in the bathroom for more than an hour or two a day due to the diabetes medication and a stool softener she was taking. Turner also described her sleeping patterns, stating that she only slept two to three hours a night and would likely need a nap during the day. (Tr., pp. 36–39.)

When asked about her body aches, she testified that she had migraine headaches, chest pain, back pain, arm pain, and stomach problems. She described her pain as "[a]ll the way from the top to the bottom [of her body]." (Tr., p. 39.) She testified that three times a week, her migraine headaches were severe enough to put her in bed for an entire day. She also stated that she had problems with her vision. Moreover, Turner stated that she had shortness of breath due to her asthma and that she used an inhaler. She could only walk about a half a block and avoided going up or down steps. She could lift under fifty pounds. She also stated that she would sometimes modify her posture during the day because of physical discomfort. If her pain worsened, she would lay down for two to three hours. (Tr., pp. 39–41.)

The ALJ asked Turner about the medications she took for her pain, and she stated that she had been taking Tylenol but now took Trazodone for pain and sleep. (Tr., p. 41.)

Vocational expert Dale Thomas also testified before the ALJ. He first testified regarding her combination job of motel mail and laundry worker, stating that the *Dictionary of Occupation Titles* classified each of those occupations at a light, unskilled level with a SVP level of 2. He stated that based on the record, however, both of the jobs as performed would have been medium. He also stated that the janitorial position was medium, unskilled work with a SVP level of 2. The hand packager job was light, unskilled work with an SVP level of 2. (Tr., pp. 42–43.)

### III.    Standard for Determining Disability Under the Social Security Act

Social security regulations define disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

Determining whether a claimant is disabled requires the Commissioner to evaluate the claim based on a five-step procedure. 20 C.F.R. § 404.1520(a),

416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011)

(discussing the five-step process).

First, the Commissioner must decide whether the claimant is engaging in

substantial gainful activity. If so, she is not disabled.

Second, the Commissioner determines if the claimant has a severe

impairment which significantly limits her physical or mental ability to do basic

work activities. If the impairment is not severe, the claimant is not disabled.

Third, if the claimant has a severe impairment, the Commissioner evaluates

whether it meets or exceeds a listed impairment found in 20 C.F.R. Part 404,

Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the

Commissioner will find the claimant disabled.

Fourth, if the claimant has a severe impairment and the Commissioner

cannot make a decision based on the claimant's current work activity or on medical

facts alone, the Commissioner determines whether the claimant can perform past

relevant work. If so, she is not disabled.

Fifth, if the claimant cannot perform past relevant work, the Commissioner

must evaluate whether the claimant can perform other work in the national

economy. If not, she is declared disabled. 20 C.F.R. § 404.1520; § 416.920.

## IV.   The ALJ's Decision

The ALJ first determined that Turner met the insured status requirement through June 30, 2012 and that she had not engaged in substantial gainful activity since the onset date.[2]

At the second step, the ALJ determined that Turner had medically determinable impairments of diabetes mellitus and asthma but that there was no evidence of a medically determinable impairment related to back pain or "falling out." He further found, however, that her diabetes and asthma did not significantly limit her ability to perform basic work-related activities. Thus, the ALJ concluded that Turner did not have a severe impairment or combination of impairments.

In support of his finding, the ALJ noted that Turner's diabetes mellitus appeared to be controlled on oral medication and that her physical exams were unremarkable. Moreover, there was no evidence of complications from the diabetes. The ALJ further noted that while asthma was never a specific diagnosis by any physician, Turner had frequently been diagnosed with chronic obstructive pulmonary disease. However, treatment notes showed that Turner denied shortness of breath or wheezing. Turner also denied having asthma or pneumonia at her consultative examination, and the medical treatment record did not include any pulmonary function studies or chest x-rays.

_____

[2] The ALJ noted that Turner did work after her alleged onset date, but he stated that such work was not at the substantial gainful activity level.

In regards to her alleged back pain and "falling out," the ALJ noted that the medical treatment record did not reveal any abnormalities. Osteoarthritis was mentioned in one assessment, but the ALJ stated that the basis for it was unclear in the record. Moreover, though she complained of body aches for the past year on a February 2012, she stated that they were relieved with Tylenol or NSAIDs and there were no references to the body aches in the doctor's assessment. In March 2012, she denied having any pain. During the 2011 consultative examination, she reported having back pains for the last six years but she was unable to identify any specific location or radiating pain. Moreover, the consulting physician determined that she had normal alignment of the spine, normal gait and station, and normal range of motion. His clinical impression was back discomfort with no objective physical findings. The ALJ also noted that Turner told the consulting physician that she had a seizure in 2000 but had not had one since. The medical treatment record did not contain imaging studies of the spine or other joints or any brain activity studies. Therefore, the ALJ found that there was no evidence of a medically determinable impairment related to back pain or "falling out."

The ALJ stated that the inconsistencies in the record did not enhance her credibility and cast doubt on her other allegations.

The ALJ also pointed out that Turner reported receiving unemployment compensation in her application for disability. Moreover, her earnings were at the

substantial gainful activity level only twice since 1996. Finally, the ALJ stated that she worked for a period after the alleged onset date.

The ALJ further noted that the medical treatment record contained numerous references to nicotine dependence since the alleged onset date. At her consultative examination, Turner admitted to smoking one pack of cigarettes per day. The ALJ determined that "[s]uch activity is inconsistent with her allegations of debilitating asthma symptoms." (Tr., p. 20.) He also noted that Turner's daily activities were inconsistent with the presence of disabling impairments. For example, she watched television, talked on the phone, read, played games, did house and yard work, went grocery shopping, prepared meals, did laundry, took care of business, paid bills, and managed her money. She took care of children, grandchildren, and a friend. She rode the bus or called transportation to medical appointments, and she went to church.

The ALJ also accepted the conclusions of the state agency counselor, which he found to be "consistent with the medical treatment record." (Tr., p. 20.)

In all, the ALJ did not find Turner's allegations credible, citing both her daily activities that were greater than her claimed functioning and her work after the alleged onset date. Moreover, the ALJ noted that the consulting physician did not find an impairment that was significantly limiting or that was not controlled by medication. The ALJ determined that the records "showed variable symptoms—

sometimes reporting no pain, sometimes with some breathing issues, but nothing consistent over a year's time."  (Tr., p. 20).

## V.    <u>Standard of Review</u>

This court's role on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole.  *Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998).  "Substantial evidence" is less than a preponderance but enough for a reasonable mind to find adequate support for the ALJ's conclusion.  *Id.*  When substantial evidence exists to support the Commissioner's decision, a court may not reverse simply because evidence also supports a contrary conclusion, *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005), or because the court would have weighed the evidence differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

To determine whether substantial evidence supports the decision, the court must review the administrative record as a whole and consider:

(1) the credibility findings made by the ALJ;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and nonexertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon

a proper hypothetical question.

*Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585–86 (8th Cr. 1992).

## VI. **Discussion**

Turner argues that the ALJ's finding of non-disability is not supported by

substantial evidence because it resulted from an improper analysis of the record.

She also alleges that the ALJ erred by failing to consider evidence of her

depression.  Finally, Turner argues that the ALJ improperly assessed her

credibility.

### A. ***The ALJ's Decision is Supported by Substantial Evidence***

Turner first alleges that the ALJ erred in finding that she had no severe

impairment or combination of impairments.  At step two of the sequential

evaluation process, an ALJ determines the medical severity of a claimant's

impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A severe

impairment is one which significantly limits a claimant's physical or mental ability

to perform basic work activities. 20 C.F.R. § 404.1520(c). "The impairment must

result from anatomical, physiological, or psychological abnormalities which can be

shown by medically acceptable clinical and laboratory diagnostic techniques. A

physical . . . impairment must be established by medical evidence consisting of

signs, symptoms, and laboratory findings, not only by the claimant's statement of

symptoms." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1508).

Although Turner has "the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities, . . . the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks and citations omitted).

Here, the ALJ's determination that Turner did not suffer from a severe impairment or combination of impairments is supported by substantial evidence on the record as a whole.

The ALJ found that Turner had medically determinable impairments of diabetes and asthma, but her determined that such impairments were not severe impairments. The ALJ noted that Turner's diabetes was controlled by medication—her A1C level dropped from 6.1 to 5.7, which was within the normal range. *See Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996) (conditions that can be treated with medication are not disabling). Turner reported no problems or symptoms regarding her diabetes to her treating doctors. Though Turner argues

that her own testimony shows that her diabetes was not controlled, as noted below, the ALJ gave good reason to discredit her allegations.

Moreover, while the consulting physician found that Turner had poor air intake and sibilant rhonchi, he also found that she had symmetrical chest walls. At a physical examination in March 2011, the treating doctor reported hearing no rhonchi, rales, or crackles. Physical examinations in September 2009, November 2009, April 2010, February 2011, March 2011, and February 2012 showed normal breathing sounds and no wheezing. Moreover, at the consultative examination, Turner denied having asthma and reported that she did not have shortness of breath. In fact, Turner denied shortness of breath at visits to her treating doctors in November 2009, April 2010, February 2011, February 2012, and March 2012. In September 2009, she reported using Albuterol and saw improvement, as she had no shortness of breath or cough.

The ALJ also determined that Turner did not have medically determinable impairments related to back pain or "falling out." Turner complained of body aches for the past year on February 2012, but she stated that the aches were relieved with Tylenol or NSAIDs. *See Goodale v. Halter*, 257 F.3d 771, 774 (8th Cir. 2001) (ALJ properly discounted reports of disabling pain when the pain was alleviated by over-the-counter pain medication). While she reported having back pain for the last six years at her consultative examination, she could not identify

any location of the pain.  Moreover, the consulting physician determined that she had normal alignment of the spine, normal gait and station, and normal range of motion.  While Turner alleges that the ALJ mischaracterized the consulting physician's report as to its assessment of her back pain, Turner is incorrect.  The consulting physician's clinical impression was back discomfort *with no objective physical findings*. (emphasis added).  The ALJ's statement that the consultative examination did not reveal any significant limiting impairment is consistent with the physician's assessment.  Finally, though osteoarthritis was included in her treating doctor's assessment on April 2010, Turner denied pain during that visit and the doctor's physical findings highlighted no specific issues.  Moreover, Turner denied having any pain in February and March 2011 and March 2012.

As to her "falling out," Turner told the consulting physician that she had had a seizure in 2000.  She also stated, however, that she had not had a seizure since then and did not take medication for it.  The consulting physician found no neurological findings.  The medical record did not contain brain activity studies or any other objective findings regarding "falling out."

When considered altogether, this constitutes substantial evidence on the record as a whole to support the ALJ's finding that Turner's impairments were not severe. Turner consistently points to her testimony to show that the ALJ's determination was not supported by substantial evidence, but as noted below, the

ALJ properly discredited her testimony and found it to be inconsistent with the evidence on a whole.

Turner also argues that the ALJ erred in not considering evidence of her depression in determining whether or not she was disabled. Specifically, she argues that the ALJ should have at least ordered a consultative examination to address Turner's mental issues. The ALJ was under no such duty. To begin with, Turner did not allege depression in her applications for benefits, her disability reports, or her function report. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("The fact that [claimant] did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed.").

Moreover, Turner did not mention depression when she testified before the ALJ or during her consultative examination. The only reference to depression in the medical records after her alleged onset date was from a February 9, 2011 visit to Dr. Dielson when Turner denied having depression. Moreover, in April 2010, Dr. Dielson noted that Turner showed no signs and complained of no symptoms of depression. Thus, the ALJ did not err in failing to order a consultative examination or otherwise address evidence of depression. *See Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (The administrative law judge is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at

the hearing as a basis for disability." (citing *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993)).

## B.      *The ALJ's Credibility Analysis is Supported by Substantial Evidence*

Turner also argues that the ALJ did not properly assess her credibility according to *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  In making a credibility determination, the ALJ must take into account: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; and 5) functional restrictions. *Id.*  The absence of objective medical evidence may also be considered, and the "ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).

An ALJ is not required to explicitly discuss each *Polaski* factor. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).  Further, the "credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Holmostrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). Consequently, courts should defer to the ALJ's credibility finding when the ALJ explicitly discredits a claimant's testimony and gives good reason to do so. *Buckner*, 646 F.3d at 558.

Here, the ALJ explicitly discredited Turner's testimony and gave many good reasons for doing so. The ALJ discussed the medical records and the lack of objective medical evidence, finding that the "inconsistencies in the record do not enhance the claimant's credibility and cast doubt on her other allegations." (Tr., p. 19.) For example, the ALJ noted that during the February 2012 visit to her doctor, Turner denied shortness of breath or wheezing. Moreover, at the 2011 consultative examination, she denied having asthma. Though she reported having back pain for six years, the consulting physician noted that she had normal alignment of the spine, no significant spasms, normal range of motion, and normal gain and station. She had no problem getting on or off the exam table or moving around the room. Further, she told the consulting physician that she could walk about four to five blocks, stand for thirty minutes, sit about two hours, and lift fifty pounds. Just two months prior, however, Turner wrote in her function report that she could only walk about a half a block before needing to rest for thirty to forty minutes.

Moreover, the ALJ noted that the records showed "variable symptoms." Sometimes Turner would report breathing issues, but often she would deny breathing issues. Moreover, she frequently denied having pain or body aches when she visited her treating doctors. The ALJ determined that none of her symptoms were consistent over a year's time. Further, though Turner claimed drowsiness and sickness in her Function Report, she failed to make any corresponding complaints

to her treating doctors. In her function report, she said that she had trouble with "seezing," yet two months later, she told the consulting physician that she had not had a seizure since 2000. Such inconsistencies support the ALJ's credibility determination.

The ALJ also considered Turner's work history in discrediting her credibility. He determined that her earnings had been at the substantial gainful activity level on an annual basis only twice since 1996. Moreover, she worked for a period after her alleged onset date. *See* 20 CFR §§ 404.1571, 416.971("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Further, Turner continued to smoke a pack of cigarettes a day even though her treating doctors continually advised her to stop. The ALJ determined that "such activity is inconsistent with her allegations of debilitating asthma symptoms." (Tr., p. 20.) *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006) (finding that in determining a claimant's credibility, an ALJ may properly consider evidence that the claimant refused to quit smoking after being advised to stop).

The ALJ also considered Turner's daily activities, finding them to be inconsistent with her allegations of disabling impairments. For example, Turner cooked, cleaned her house, worked in the yard, watched TV, talked on the phone, read, and played games. She went grocery shopping, went out to take care of her

business, paid bills, and went to church on a regular basis. She also cared for her children, grandchildren, and a friend. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, [and] shopping . . . are inconsistent with subjective complaints of disabling pain.").

Despite the reasons the ALJ gave for discrediting her allegations, Turner claims that the ALJ erred because he failed to sufficiently address specific statements she made during the hearing about needing to use the restroom for an hour or two a day. The ALJ did not err by failing to expressly address this statement. The ALJ stated that inconsistencies in the record cast doubt on her other allegations, which demonstrated his disbelief in her subjective complaints about her limitations and symptoms. As discussed above, given the inconsistencies in the evidence as a whole, the ALJ could properly discredit Turner's subjective statements. *See Goff v. Barnhart,* 421 F.3d 785,792 (8th Cir. 2005) (explaining that "[t]he ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole" (quotation and citation omitted)). As a result, the ALJ did not err in evaluating Turner's credibility. *See also Wildman v. Astrue*, 599 F.3d 959, 966 (8th Cir. 2010) (explaining that the ALJ is not required to discuss every

piece of evidence, and the failure to cite specific evidence does not indicate that it was not considered).

Based on the foregoing, I conclude that the ALJ properly discredited Tuner's allegations of disabling pain and limitations, and there are good reasons for doing so. Therefore, I defer to his finding of non-credibility.

## VII. <u>Conclusion</u>

Based on the foregoing, I conclude that there is substantial evidence on the record to support the Commissioner's decision to deny benefits.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2014.